# Proposed Amendments to Military Commission Order No. 1

*The Secretary of Defense could, consistent with the President's Military Order of November 13, 2001, revise Military Commission Order No. 1 so that the presiding officer would rule upon all questions of law (subject to the requirements of section 4(c)(3) of the Military Order regarding questions of admissibility), and the other members of the commission would make findings and pronounce sentence.*

August 12, 2005

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF DEFENSE

You have requested our view on whether certain proposed amendments to the Secretary of Defense's Military Commission Order No. 1 ("Military Commission Order") are consistent with the President's Military Order of November 13, 2001, 3 C.F.R. 918 (2001 Comp.) ("President's Military Order"). We have reviewed the proposed amendments and conclude that all of them are consistent with the President's Military Order.

One proposed change merits special discussion: It has been proposed, through several of the revisions, to amend the Military Commission Order so that (i) the presiding officer of a military commission would make all legal rulings but not vote on findings or sentence and (ii) the other members of the commission would vote on findings and sentence but not make any legal rulings (except on some questions of admissibility). As explained below, such amendment would be consistent with the President's Military Order.

The President's Military Order, entitled "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," provides, among other things, that the Executive Branch administer trials by military commission of al Qaeda members and other foreign individuals who have committed or supported acts of international terrorism. *See* President's Military Order §§ 2(a), 4(a); *see also id.* § 7(c) (order "is not intended to and does not create any right, benefit, or privilege, substantive or procedural, enforceable at law or equity by any party"); *Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8–9 (D.C. Cir. 1999) (holding that there was no "judicial review" of an executive order that expressly disclaimed creating any rights, and rejecting the use of such order in seeking judicial review of agency action as "an indirect—and impermissible—attempt to enforce private rights under the order"). The Secretary of Defense, in turn, is expressly authorized by that order to promulgate such "orders and regulations" as "may be necessary" to provide for trial by military commission. President's Military Order § 4(b). His orders and regulations shall "include, but not be limited to, rules for the conduct of the proceedings of military commissions, including pretrial, trial, and post-trial procedures, modes of proof, issuance of process, and qualifications of attorneys." *Id.* § 4(c). In addition, the procedures adopted by the Secretary must "at a minimum" meet eight specific requirements set forth in section 4(c). Among these

eight requirements, and particularly relevant here, is section 4(c)(2), which requires "a full and fair trial, with the military commission sitting as the triers of both fact and law." In addition, section 4(c)(3) provides for the "admission of such evidence as would, in the opinion of the presiding officer of the military commission (or instead, if any other member of the commission so requests at the time the presiding officer renders that opinion, the opinion of the commission rendered at that time by a majority of the commission), have probative value to a reasonable person"; that is, section 4(c)(3) requires that the presiding officer make rulings on admissibility, subject to the override of a majority of the commission.

Pursuant to these authorities and requirements, the Secretary of Defense promulgated the Military Commission Order on March 21, 2002. That order allows for both the presiding officer and all other members of the military commission together to decide questions of law or fact (subject to the special rule for questions of admissibility). *See, e.g.*, Military Commission Order §§ 5(L), 6(F).

To determine whether the above-described proposal, dividing authority between the presiding officer and the other members of a commission, is consistent with the President's Military Order, the primary question is whether such division would contravene the requirement of section 4(c)(2)—that "the military commission sit[] as the triers of both fact and law." Although it is possible to read this section to require each member of a military commission to decide on all questions of law and fact, in which case the proposed change would violate section 4(c)(2), it is also permissible to read it as merely requiring that the military commission—as opposed to some other entity—decide all questions of law and fact at trial. The latter is a reasonable reading of section 4(c)(2) given its text and the context.

The text of section 4(c)(2) might be considered awkward in referring to "the military commission" (singular) as the "triers" (plural). This construction, however, likely just reflects that the term "military commission" is a collective noun. It therefore "can take either singular or plural verbs and subsequent pronouns." *Columbia Guide to Standard American English* 100 (1993). Here, given the plural "triers," section 4(c)(2) appears to use the term "military commission" to mean the "military commission members," as individuals, rather than the military commission as an entity. *See Oxford Dictionary of English Grammar* 69 (1994) ("The choice of singular or plural verb—and corresponding pronouns and determiners—depends on whether the group is considered as a single unit or a collection of individuals."); Morton S. Freeman, *The Grammatical Lawyer* 305 (1979) ("Nouns known as collective nouns may be either singular or plural, depending upon whether the group is considered as a whole—in which case singulars are used—or as individual members—in which case plurals are used[.]"). Under this reading of "military commission," it is true that one might conclude that the word "both" in section 4(c)(2) indicates that *each* member of the military commission must decide all questions of fact and law. But the language is not unequivocal on this point, and one also could conclude that section 4(c)(2), in requiring that the military commission members be "triers of both fact and law," merely indicates that *some* from among the military commission members must

resolve all legal or factual questions. The quoted phrase, in other words, may be read as ensuring that the military commission, in conducting "a full and fair trial," is complete in and of itself with regard to both fact and law—not delegating any of its powers as trier to any other court or tribunal. If, for example, a small firm composed of two policy experts and a lawyer were hired to brief members of Congress on "both the facts and law" underlying a particular bill, it would at the very least be reasonable to understand the terms of the retention as not requiring each of the members of the firm to master all issues, but rather as leaving the members free to divide up the responsibilities as appropriate, by, for example, having the policy experts handle the factual issues and the lawyer handle the legal issues. The firm would still be providing the briefing as to both types of issues. Thus, under the most natural reading of the term "military commission" as used in section (4)(c)(2), together with this latter reading of the phrase "triers of both fact and law," that section may reasonably be interpreted as not barring the proposed change in the Military Commission Order.

Alternatively, and notwithstanding the plural "triers," section 4(c)(2) might be read to use "military commission" to mean the military commission as an entity. That sense does seem to be the more frequent usage in section 4. *See* President's Military Order § 4(a) (providing that a covered individual shall "be tried by military commission for any and all offenses triable by military commission"), § 4(c)(1) (providing for "military commissions to sit at any time and any place"), § 4(c)(3) (referring to the "presiding officer of the military commission" and "any other member of the commission"). Under this reading, section 4(c)(2) would simply require that the military commission as an entity decide in some authorized fashion all questions of fact or law, without specifying how the entity did so and thus without imposing any requirement regarding the duties of individual commission members. Thus, whatever the better reading of section 4(c)(2), it would not prohibit the Secretary of Defense from specifying the details for how the commission made such decisions.

In addition, other provisions of the President's Military Order further support the view that not every member (or even a majority of the members) of a military commission need participate in or approve every decision. Section 4(c)(3), for example, distinguishes between the roles of the "presiding officer" and "other member[s]," thus expressly contemplating the separate allocation of authority among military commission members. And sections 4(c)(6) and (c)(7) provide for conviction and sentencing "only upon the concurrence of two-thirds of the members of the commission present at the time of the vote, a majority being present." Nothing in these two provisions requires that each member vote on findings and sentence. To the contrary, by making clear that the military commission need not act by unanimity or with all members present, they contemplate otherwise and, together with section 4(c)(3), reinforce our view of the permissible readings of section 4(c)(2).

As noted above, the President's Military Order also expressly grants to the Secretary of Defense the broad authority to promulgate such "orders and regula-

tions" as "may be necessary" to "carry out" the President's order to provide for trial by military commission, *id.* § 4(b), which orders and regulations shall include, but are not limited to, "rules for the conduct of the proceedings of military commissions," *id.* § 4(c). *See also id.* § 6(a) ("[T]he Secretary of Defense shall issue such orders and regulations as may be necessary to carry out any of the provisions of this order."). Two related points follow from this grant. First, because the President has committed to the Secretary the authority to carry out the presidential order requiring military commissions, the Secretary has discretion to follow any reasonable interpretation of ambiguous provisions in the President's order. *See Udall v. Tallman*, 380 U.S. 1, 18 (1965) (agency interpretation of presidential orders is lawful "if . . . the [agency]'s interpretation is not unreasonable, if the language of the orders bears [its] construction"); *Kester v. Campbell*, 652 F.2d 13, 15 (9th Cir. 1981) ("In light of an agency's presumed expertise in interpreting executive orders charged to its administration," the agency's interpretations should receive "great deference."). Section 4(c)(2) is such a provision and, as shown, the Secretary may reasonably interpret it such that it would permit the proposed change in the Military Commission Order. Second, the President has granted to the Secretary broad authority to specify details for the workings of the military commission. *See* Letter for Raymond J. Kelly, Chairman, Railroad Retirement Board, from Robert W. Minor, Acting Deputy Attorney General, Department of Justice at 1 (Sept. 13, 1954) (where an executive order gave agencies authority to establish personnel regulations respecting national security, and where that order did not address a particular matter, that matter was "left to the discretion of each agency"); *cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (agency's power to administer a statute "necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress") (internal quotation marks and citation omitted). Therefore, and under a reasonable reading of section 4(c)(2), the Secretary has authority under section 4(b) to specify particular duties for commission members to the extent that the President has not expressly done so in his order (as he has through the eight specific requirements in section 4(c)).

We therefore conclude that the Secretary of Defense could, in a manner consistent with the President's Military Order, revise the Military Commission Order as proposed so that the presiding officer would rule upon all questions of law (subject to the requirements of section 4(c)(3) regarding questions of admissibility) and the other members would make findings and pronounce sentence.

C. KEVIN MARSHALL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
